## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

ANA JUNEJA,
ANA LAW LLC,
ANAGPT LLC,
ANA IP HOLDINGS LLC,
    Plaintiffs,

    v.

ASSOCIATION OF NATIONAL
ADVERTISERS, INC.,
    Defendant.

</td><td>

Civil Action No. 1:25-cv-09433


**COMPLAINT**


**JURY TRIAL DEMANDED**

</td></tr>
</table>

Plaintiffs Ana Juneja, Ana Law LLC, AnaGPT LLC, and Ana IP Holdings LLC, by and through undersigned counsel, for their complaint against Defendant Association of National Advertisers, Inc. ("Defendant"), alleges as follows:

### NATURE OF THE ACTION

1.      This case is about a billion-dollar trade group that preaches "brand integrity" while stealing the brand of a woman-of-color attorney who built it from the ground up. Plaintiff Ana Juneja is a nationally recognized intellectual property lawyer, educator, and entrepreneur whose ANA® and ANA LAW® marks anchor a successful IP law practice and a prominent legal education platform followed by more than 300,000 people. After those marks became federally registered, defendant the Association of National Advertisers, Inc. rebranded its flagship legal conference as "ANA Masters of Advertising Law," launched a spin-off "ANA Law 1-Day" series, and promoted both using the identical hashtag #ANALaw.

2.      For Defendant, "ANA" is just an acronym. For Ms. Juneja, it is her name and the linchpin of a distinctive brand built over years of work in law, branding, and compliance. When Defendant splashed "ANA Law" across sponsorship decks, hashtags, and ticket portals, lawyers and clients could—and did—reasonably assume she was involved. The confusion is real, shown by actual inquiries and by Defendant's default in a contested Trademark Trial and Appeal Board opposition at the United States Patent and Trademark Office.

3.      The infringement is willful, lucrative, and brazen. Defendant forged ahead after repeated notice of Plaintiffs' protected marks and even after its TTAB default—an admission of likely confusion. When pressed for resolution, its representatives ignored and dismissed Ms. Juneja, laying bare the power-versus-principle dynamic driving this case.

4.      By appropriating Plaintiffs' marks in the very market segment—legal services and education—where they are strongest, Defendant siphons goodwill, dilutes a distinctive brand, and betrays the inclusive, ethical ideals it trumpets. The Lanham Act does not permit such hypocrisy. Defendant's unauthorized use of ANA LAW not only confuses the public about brand origin—it falsely presents Defendant as an authority in the very legal discipline Plaintiff has built her name on: trademark law, branding compliance, and legal marketing ethics.

5.      This action seeks to vindicate core principles of trademark law: that registered marks are entitled to protection, that willful infringers will be held accountable, and that brand value built through individual effort cannot be co-opted by institutional scale or marketing spend.

6.      Plaintiffs therefore seek: (a) preliminary and permanent injunctions barring any "ANA" branding in legal services, conferences, or related hashtags; (b) disgorgement of profits and treble damages under 15 U.S.C. § 1117; (c) punitive damages under New York law;

(d) attorneys' fees for this exceptional, willful case; and (e) corrective advertising to restore clarity over who—and what—ANA LAW® is.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over Plaintiffs' Lanham Act claims under 28 U.S.C. §§ 1331 and 1338(a). The Court has supplemental jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367. Additionally, this Court has jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

8.    Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

9.    This Court has personal jurisdiction because Defendant transacts business in New York and has conducted the challenged events within this District.

## PARTIES

10.    Plaintiff Ana Juneja is a 34-year-old Indian-American intellectual property attorney, legal educator, social media creator, and entrepreneur residing in Washington, DC. Ms. Juneja is the sole member of Plaintiffs Ana Law LLC, AnaGPT LLC, and Ana IP Holdings LLC.

11.    Plaintiff Ana Law LLC is a Wyoming limited liability company with operations in Sheridan, Wyoming, and Washington, DC. It is the law firm founded, owned, and operated by Ms. Juneja. It is an exclusive licensee of certain ANA®-formative marks under a license agreement with Plaintiff Ana IP Holdings LLC.

12.    Plaintiff AnaGPT LLC (formerly Ana Media LLC) is a Wyoming limited liability company with operations in Sheridan, Wyoming, and Washington, DC. It is Ms. Juneja's media

and education business. It is an exclusive licensee of certain ANA®-formative marks under a licensing agreement with Plaintiff Ana IP Holdings LLC.

13.    Ana IP Holdings LLC is a Wyoming limited liability company with operations in Sheridan, Wyoming.  It is a holding company that owns the intellectual property assets associated with the law practice, legal education business, and brand founded by Ms. Juneja, including the federally registered ANA® and ANA LAW® marks and other ANA®-formative marks. It licenses the use of these marks to Ms. Juneja's law firm, Ana Law LLC, and her media and education company, AnaGPT LLC.

14.    Defendant Association of National Advertisers, Inc. is a New York corporation with its principal office at 155 East 44th Street, New York, NY 10017. Founded in 1910 as a trade association for the advertising and marketing industry, its members today include Google, Amazon, TikTok, and other Fortune 50 companies. Defendant promotes itself under the acronym "ANA." Its activities include hosting conferences, networking events, and educational programs for advertising and marketing professionals—and recently legal conferences targeted at legal professionals branded with "ANA" and "LAW" in the name.

## FACTUAL ALLEGATIONS

### A.    Attorney Ana Juneja's ANA® and ANA LAW® Brand and Identity

15.    Plaintiff Ana Juneja is a 34-year-old Indian-American intellectual property attorney, legal educator, social media creator, and entrepreneur who has built a successful law practice and legal education brand around her first name, Ana. Ms. Juneja began her career in intellectual property in 2017, when she interned at the United States Patent and Trademark Office during law school, gaining direct insight into federal trademark prosecution and

enforcement. After graduating from law school, she began working as an intellectual property attorney at a global intellectual property firm in Chicago.

16.     In June 2022, Ms. Juneja launched her own law firm, branding it boldly and simply as "ANA LAW." Ms. Juneja founded Ana Law LLC with a vision of a client-centered, globally minded intellectual property practice. As a woman- and minority-owned firm, Ana Law LLC has focused on serving innovators nationwide. From the outset, the firm's brand has revolved around the name "ANA," reflecting not only Ms. Juneja's first name but also a personal guarantee of quality and trust. Under Ms. Juneja's leadership, Ana Law LLC has grown into a full-service intellectual property law firm offering representation in patents, trademarks, copyrights, anti-counterfeiting, IP portfolio management, and business law. Every aspect of the firm's marketing and identity has centered on Ms. Juneja's ANA® brand, reinforcing to clients and the public that ANA LAW® is a trusted authority in protecting intellectual property and business interests.

17.     In the years since its founding, Ana Law LLC—and by extension, Ms. Juneja's ANA LAW® brand—has earned a reputation for excellence, innovation, and client-centered service in the field of intellectual property law. With nearly a decade of experience in global intellectual property matters, Ms. Juneja has overseen or contributed to more than 8,000 trademark and patent filings across over 190 countries. Ana Law LLC serves clients across the United States, including in New York, and abroad. That depth of global exposure informs the strategic and results-oriented services that define Ms. Juneja's ANA LAW® brand today. Business leaders and innovators across the United States and internationally now recognize ANA LAW® as a trusted source of legal expertise—one that is inextricably tied to Ms. Juneja herself.

18.     Ms. Juneja's professional philosophy—captured in her guiding principle, "Never give away your ideas for free"—is reflected in every facet of the firm's approach. By providing direct, hands-on counsel, she has built a practice model rooted in accessibility, precision, and outcome-driven strategy. Distinct from traditional firms, Ana Law offers flat-fee, guaranteed legal services—an innovation that has attracted creators, startups, and global brands seeking predictability without compromising quality. This transparency-forward model has positioned the ANA LAW® brand as a standout in a traditionally opaque industry.

19.     The success of Ms. Juneja's practice and the renown of the ANA LAW® brand have been reflected in numerous professional honors. From 2021 through 2024, Ms. Juneja was repeatedly recognized as a Lawyer of Distinction in Intellectual Property Law. In 2022, LinkedIn selected her for its Creator Accelerator program (Technology & Innovation cohort), recognizing her as an influential voice in legal education on social media. Super Lawyers® named her a "Rising Star" in Intellectual Property for both 2023 and 2024, and Best Lawyers®: Ones to Watch in 2024. These accolades confirm that ANA LAW® is not just an emerging brand, but one respected at high levels of the legal profession. Clients ranging from Fortune 500 companies and public figures to start-up entrepreneurs and creators have sought out Ms. Juneja and her firm for representation, relying on the goodwill symbolized by the ANA LAW® name.

20.     A core part of the ANA LAW® brand's identity is public education in intellectual property law. Ms. Juneja has leveraged modern online platforms to make IP law accessible and engaging to a broad audience. Across TikTok, Instagram, and LinkedIn, she has amassed a total of over 300,000 followers who tune in to watch her explain complex legal concepts in relatable, often viral videos. Under the handles "Ana Juneja" and "Ana Law," she produces short-form educational content that demystifies trademarks, patents, and business law, empowering creators

and entrepreneurs to protect their work (see Exhibit C). Her videos are often labeled with captions such as "Tips from an Attorney," "Business Tips from a Lawyer," and "Start a Business Legally," and include breakdowns of novel issues of IP law, technology, and business. Her voice and likeness are directly associated with the ANA LAW® brand, reinforcing it as a national source of legal education.

21.    This social media-based educational platform is a revenue-generating, client-converting legal education brand. Through her posts, Ms. Juneja directs followers to downloadable legal tools, law firm consultations, and educational partnerships under the ANA LAW® mark. Signature content such as "Part 1 of Starting a Business: Tips from an Attorney" and "Trademark Tips from a Lawyer" are tied to Ms. Juneja's identity and the ANA LAW® brand. These videos are frequently embedded in CLE programming, shared by universities, and cited in interviews and media appearances about legal issues in the digital creator economy.

22.    This extensive public outreach has amplified the distinctiveness of the "ANA LAW" name. When people see "ANA" in the context of law, they increasingly associate it with Ms. Juneja and her approach to legal services and education. Ms. Juneja is widely recognized as one of the most-followed IP attorneys on social media, including on major platforms such as TikTok and Instagram. She was an early adopter of short-form video to translate complex legal concepts into accessible content, helping to popularize modern methods of legal outreach for creatives and entrepreneurs. Her sustained efforts have turned ANA LAW® into a legal services and education brand known across digital platforms and beyond

23.    In addition to her law practice and social media programming, Ms. Juneja owns and operates AnaGPT LLC (formerly Ana Media LLC), a nationally recognized provider of continuing legal education (CLE). Since 2022, her CLE programs have covered a wide range of

intellectual property and related topics, including trademark infringement, the legal mechanics of branding, social media compliance, digital marketing, and advertising regulations. She has served as a recurring CLE instructor for providers such as National Business Institute (NBI), myLawCLE, and various state bar associations

24.     ANA®- and ANA LAW®-branded CLEs include sessions such as Effective Social Media for Attorneys (licensed by the DuPage County Bar Association in May 2022) and Using Generative AI in Business Formation (licensed by NBI, Inc. in July 2024) (see Exhibit D).

25.     ANA® and ANA LAW® also appear in mainstream legal media. Ms. Juneja is a frequent guest on nationally distributed CLE podcasts and legal strategy broadcasts, where she is promoted under the ANA® and ANA LAW® names. These appearances—focused on trademark compliance, social media law, and digital advertising—regularly reach legal professionals, creators, and compliance officers (see Exhibit E). Her voice, image, and the ANA® brand family are widely recognized among attorneys who work at the intersection of law and media.

26.     ANA®, ANA JUNEJA®, and ANA LAW® have been referenced in national publications including Yahoo Finance (July 2023) and Law.com (September 2024) (see Exhibit F).

27.     As of November 2025, the ANA JUNEJA® and ANA LAW® TikTok, Instagram, and YouTube accounts had more than 310,000 followers, more than 10,000,000 cumulative views and are the top most followed business and intellectual property legal accounts on social media (see Exhibit C).

28.     Search-engine results for "ana law cle" display Plaintiffs' and Defendant's listings on the same results page, demonstrating overlapping market channels and reinforce customer confusion (see Exhibit G).

**B.**    **Plaintiffs' Ownership and Use of Numerous ANA®-Formative Marks**

29.    Ms. Juneja's IP holding company—Plaintiff Ana IP Holdings LLC—owns a

portfolio of 8 federally registered trademarks anchored by the core ANA® brand.  All 8 of these

marks are registered on the U.S. Patent and Trademark Office's Principal Register.  Seven of

these marks are used in connection with legal information and services in International Class 45,

and the eighth is used in connection with business and advertising services in International Class

35.  These 8 registered marks are as follows:

| MARK | REG. NO. | REG. DATE | GOODS/SERVICES |
|---|---|---|---|
| ANA® | 7197737 | Oct. 17, 2023 | Class 45: Legal services; Legal advisory services in the field of business |
| ANA LAW® | 6757972 | June 14, 2022 | Class 45: Legal services and legal information (see Exhibit A for full list) |
| ANA LAW FIRM® | 7115110 | July 18, 2023 | Class 45: Legal information services; Legal services |
| ANA LAW GROUP® | 7115479 | July 18, 2023 | Class 45: Legal services and legal information (see Exhibit A for full list) |
| ATTORNEY ANA® | 6898467 | Nov. 15, 2022 | Class 45: Legal services (see Exhibit A for full list) |
| ANA JUNEJA® | 6974494 | Feb. 7, 2023 | Class 35: Advertising and marketing services (see Exhibit A for full list) |
| ANA JUNEJA® | 6974493 | Feb. 7, 2023 | Class 45: Legal information services; Legal services |
|  ANA LAW. | 6758019 | June 14, 2022 | Class 45: Legal services and legal information (see Exhibit A for full list) |

30.     The registration of these ANA®-formative marks establishes a statutory presumption of validity, ownership, and the exclusive nationwide right to use these marks in connection with legal services under 15 U.S.C. § 1115(a).

31.     Plaintiffs also use the ANA® and ANA LAW® marks in connection with continuing legal education and professional training services (Class 41) and claim common-law rights in those services dating to 2021.

32.     In addition to those 8 registered marks, Plaintiff Ana IP Holdings LLC also owns 11 pending trademarks likewise anchored by the core ANA® brand.  These marks are:

| MARK | APP. NO. | APP. DATE | GOODS/SERVICES |
|------|----------|-----------|----------------|
| ANAGPT™ | 99241376 | June 18, 2025 | Class 9: Downloadable software, apps, podcasts, etc. (see Exhibit B for full list) |
| ANAGPT™ | 99241466 | June 18, 2025 | Class 35: Business and advertising services (see Exhibit B for full list) |
| ANAGPT™ | 99239048 | June 17, 2025 | Class 41: Education and entertainment services (see Exhibit B for full list) |
| ANAGPT™ | 99241426 | June 18, 2025 | Class 42: Software as a service (SAAS) services (see Exhibit B for full list) |
| ANAGPT™ | 99238993 | June 17, 2025 | Class 45: Legal services and legal information (see Exhibit B for full list) |
| ANA STEM™ | 99242104 | June 19, 2025 | Class 35: Women/Girls in STEM charitable services (see Exhibit B for full list) |

| ANA STEM™ | 99242144 | June 19, 2025 | Class 36: Women/Girls in STEM charitable fundraising services (see Exhibit B for full list) |
| ANA STEM FOUNDATION™ | 99242174 | June 19, 2025 | Class 35: Women/Girls in STEM charitable services (see Exhibit B for full list) |
| ANA STEM FOUNDATION™ | 99242202 | June 19, 2025 | Class 36: Women/Girls in STEM charitable fundraising services (see Exhibit B for full list) |
| ANAMODE™ | 99242993 | June 19, 2025 | Class 9: Downloadable AI software, and apps (see Exhibit B for full list) |
| ANAMODE™ | 99243006 | June 19, 2025 | Class 42: Software as a service (SAAS) services for AI software (see Exhibit B for full list) |

33.     All 19 of these marks incorporate the distinctive "ANA" element as the dominant identifier, confirming that "ANA" and "ANA LAW" signify a nationally recognized brand for legal services and legal education. Plaintiffs' ANA® and ANA LAW® marks are distinctive and strong—registered on the Principal Register and widely recognized in the legal and marketing-law communities—entitling them to broad protection.

34.     Plaintiff Ana IP Holdings LLC licenses the registered ANA®, ANA LAW®, and other ANA®-formative marks to Ms. Juneja's law firm, Ana Law LLC, for use in connection with its legal services, and to her CLE company, AnaGPT LLC (formerly Ana Media LLC), for use in its continuing legal education programming.

35.     In addition to these internal licenses, Ms. Juneja (through AnaGPT LLC) has entered into licensing and promotional agreements with third-party CLE providers, authorizing them to use the ANA®, ANA LAW®, and other ANA®-formative marks in connection with the

marketing and branding of CLE programs she teaches. These providers have promoted ANA-branded CLE programs nationwide to attorneys, law firms, corporate counsel, and other legal professionals. Such agreements have generated revenue, built brand equity, and reinforced the ANA® brand family as a trusted source of legal knowledge.

36.     Across her law practice, CLE business, and educational partnerships, Ms. Juneja has consistently developed and promoted the ANA® and ANA LAW® marks through firm communications, online platforms, social media content, media appearances, and speaking engagements. The marks derive distinctiveness from her personal reputation and function as source identifiers in the legal marketplace.

37.     The ANA LAW® brand is inseparable from Ms. Juneja's public identity. She is the face of the brand, appears in all branded content, and engages directly with the public as "Ana Law." The ANA® and ANA LAW® marks do not operate as acronyms or impersonal designations—they represent a legal services and education brand built around an individual. Public recognition of "ANA" in the legal industry is tied to Ms. Juneja.

38.     Plaintiff's ANA® and ANA LAW® marks are famous within the meaning of 15 U.S.C. § 1125(c), enjoying widespread recognition nationwide—particularly among professionals in the legal, branding, intellectual property, and creator economy sectors. Since at least 2018, they have been used continuously in commerce, featured in national media such as Yahoo! Finance and LinkedIn's Creator Accelerator program, followed by more than 300,000 people on social media, and repeatedly recognized by Super Lawyers®, Best Lawyers®, and Lawyers of Distinction. Registered on the Principal Register and leveraged across a broad portfolio of ANA®-formative marks, they are further distinguished by global client work spanning over 190 countries and 8,000+ trademark and patent matters, as well as nationwide

legal education through viral videos, CLE programming, podcasts, and more. This sustained exposure has cemented the ANA® and ANA LAW® marks as a single, distinctive source: Plaintiff and its founder, Ana Juneja. Defendant's later use of "ANA Law," #ANALAW, and "ANA Masters of Advertising Law" has blurred that distinctiveness, constituting dilution under 15 U.S.C. § 1125(c)(1) and causing irreparable harm to the marks' source-identifying power.

**C.    Defendant's 2022 Rebrand Using ANA LAW to Promote Legal Education**

39.    Defendant is a century-old trade association for the advertising industry. It represents major corporate members like Google, Amazon, Meta, and TikTok, and positions itself as a thought leader in marketing, advertising, and compliance.

40.    For decades, Defendant has hosted an annual conference on marketing and advertising law.

41.    In 2022, Defendant rebranded this conference as the "ANA Masters of Advertising Law" Conference, as shown in the following screenshot and Exhibit H. The conference was first held under this name on November 8–10, 2022, at The Diplomat Beach Resort in Hollywood, Florida. Defendant promoted the rebranded event as the largest advertising, marketing, and promotion law conference in the United States. Prominent law firms such as Loeb & Loeb and Venable sponsored and participated, leading sessions on topics including Web3, loyalty program regulation, AI-driven marketing trends, and other issues in advertising and marketing law (see Exhibit H for full website screenshot from https://www.ana.net/content/show/id/ms-baalaw-nov22#speakers).



## November 8-10, 2022 | Hollywood, Fla.

The biggest advertising, marketing, and promotion law conference in the nation returned for 2022 – rebranded as the ANA Masters of Advertising Law. The conference was structured around the theme "Re-Envisioning the Landscape: Change is Now" and examined the perennial issues impacting advertising and marketing law – as well as the cutting edge issues affecting the industry as it emerged from the political and societal upheaval of the previous two years and into a new normal.

The conference brought together top in-house counsel from major brands, leading practitioners from America's foremost law firms, and important regulators to discuss key legal and regulatory advertising, marketing, and privacy topics, with detailed drilldowns on the major issues and case studies that provided attendees with the actionable intelligence they needed to succeed.

In addition to hearing from more than more than 100 expert speakers, the conference also offered attendees the chance to earn continuing legal education (CLE) credits and the industry's best networking opportunities.

42.    Before the 2022 rebrand, Defendant held this conference under descriptive titles like "Advertising Law & Public Policy Conference" and "Marketing Law Conference." These names used "ANA" only as part of the host organization's name, sometimes in combination with a partner organization's name, like "ANA/BAA Marketing Law Conference." Unlike the 2022 rebrand, these former names did not directly present "ANA" as a legal brand or service identifier.

43.    Defendant's pre-2022 event branding was inconsistent, descriptive, and never functioned as a source identifier for legal services in Class 45.

44.     Since 2022, Defendant has promoted its rebranded "ANA Masters of Advertising Law" conference across digital channels including its website, email campaigns, and social media.

45.     Defendant has also launched new events under the name "ANA Law 1-Day Conference." These also incorporate "ANA" with "LAW," directly mirroring Plaintiffs' ANA®-formative marks. On information and belief, these "ANA Law 1-Day" conferences began in 2023. For example, an "ANA Advertising Law 1-Day Conference" on March 20, 2024 featured sessions on generative AI, retail marketing law, and other topics within the scope of Plaintiffs' services.

46.     Defendant also promotes its legal events across social media using the hashtag #ANALaw, which is visually and phonetically identical to Plaintiffs' registered ANA LAW® mark. This usage by Defendant is not descriptive—it serves as a source identifier in the same legal education space in which Plaintiffs operate.

**D. Defendant's Trademark Portfolio and Abandonment of ANA**

47.     Defendant's own trademark portfolio underscores that its rights in "ANA" are limited and weak. Defendant maintains a single live registration, U.S. Reg. No. 3135709, issued on August 29, 2006, in International Class 35 for "association services promoting the interests of members of the advertising community," with claimed first use in 1911 (see Exhibit I). This registration reflects Defendant's use of ANA purely as an acronym for "Association of National Advertisers," not as a standalone brand for law or legal services.

48.     By contrast, Defendant has repeatedly allowed other ANA registrations to lapse. U.S. Reg. No. 4,526,851 (Classes 35 and 41) was cancelled on November 22, 2024 for failure to file the Section 8 declaration of use, and U.S. Reg. No. 3,212,496 (Classes 35 and 41) was

cancelled on October 4, 2013 for the same reason. These cancellations demonstrate that Defendant has not used ANA consistently across classes and has abandoned rights in those categories.

49.    This record matters. The only live ANA registration Defendant holds is limited to trade-association services in Class 35. Defendant has no registrations covering legal services, CLE programming, or law-branded events in Class 45. Its repeated abandonment of other ANA marks confirms not expansion, but retreat. Federal law presumes abandonment after three years of non-use. 15 U.S.C. § 1127; see *Silverman v. CBS Inc.*, 870 F.2d 40, 45 (2d Cir. 1989). A party intending to expand ANA into the legal field would not repeatedly abandon its own registrations.

50.    Plaintiffs' consistent and growing ANA® and ANA LAW® portfolio thus stands in sharp contrast to Defendant's inconsistent record. Defendant's opportunistic expansion into "ANA LAW" demonstrates willful infringement: it is not an extension of any legitimate trademark rights Defendant owns, but a knowing misappropriation of Plaintiffs' protected brand in Class 45.

### E.    Likelihood of Confusion from Defendant's Infringing Use

51.    Plaintiffs' ANA® and ANA LAW® marks are strong, distinctive, and well-known in the legal services and education space. Defendant has adopted nearly identical designations—"ANA Masters of Advertising Law," "ANA Law 1-Day Conference," and "#ANALaw"—for events and programming that cover substantially the same subject matter as Plaintiffs' offerings, marketed through the same channels to the same audiences. These circumstances create a substantial likelihood that consumers will believe Defendant's services are affiliated with, sponsored by, or endorsed by Plaintiffs.

52.     Defendant's use of these designations places the identical "ANA" and "LAW" elements in the same sequence and legal context as Plaintiffs' marks, signaling to consumers that the services come from or are connected to Plaintiffs. This similarity in wording and context is reinforced by the fact that Defendant's branding is deployed in the same types of professional settings—CLE programming, legal conferences, and attorney-focused marketing—where Plaintiffs' marks are already established.

53.     The marks used by Defendant are visually and phonetically similar to Plaintiffs' marks, sharing identical word elements ("ANA" and "LAW") in the same sequence and context. Defendant promotes its events through the same types of marketing channels Plaintiffs use— digital platforms, social media posts, email marketing, and CLE-focused networks—ensuring that both parties' content reaches overlapping professional audiences of attorneys, corporate counsel, business owners, and marketing professionals.

54.     Plaintiffs and Defendant both provide legal information and education on overlapping topics, including advertising compliance, intellectual property law, licensing, contract law, FTC regulations, children's privacy, social media and influencer rules, AI and ethics, copyright infringement, and emerging technology issues. Both target a nationwide audience, increasing the likelihood that prospective consumers will encounter both sets of marks in close proximity.

55.     Plaintiff has used #ANALaw extensively on social media to promote intellectual property and business law content. Defendant's adoption of the identical hashtag for its legal education events inserts its brand directly into Plaintiff's established digital footprint, increasing the risk that followers, prospective clients, and professional contacts will believe Defendant's content is related to or originates from Plaintiff.

56.     Defendant's event names place the distinctive "ANA" element immediately alongside "LAW" or other law-related terms, replicating the structure of Plaintiffs' ANA®-formative marks. This pairing signals to consumers that the services share a common source, especially in the legal education context where Plaintiffs' marks are already established and recognized.

57.     The similarity in structure and meaning is compounded by Defendant's use of the same types of marketing channels—digital platforms, email campaigns, CLE advertising networks, and social media—that Plaintiffs rely on to reach their nationwide audience of attorneys, corporate counsel, business owners, and marketing professionals. Because these channels overlap, prospective consumers are likely to encounter both parties' marks in close proximity, increasing the risk of mistaken affiliation.

58.     Defendant adopted these designations after Plaintiffs had obtained federal registrations and established significant recognition of their ANA®-formative marks in the legal marketplace. This was not a continuation of any preexisting trademark usage by Defendant, but a substantial rebrand that placed its legal education programming in direct competition with Plaintiffs' services and in the same brand space, resulting in both actual confusion and a strong likelihood of future confusion.

**F.     Defendant's Attempt to Register an Infringing Mark**

59.     On March 3, 2022, Defendant filed U.S. Trademark Application Serial No. 97294580 for "ANA MASTERS OF ADVERTISING LAW" in connection with educational conferences and related services (the "Infringing Mark"). This application was published for opposition on May 2, 2023.

18

60.     On July 1, 2023, Plaintiffs filed Opposition No. 91285847 before the Trademark

Trial and Appeal Board ("TTAB"), asserting priority and likelihood of confusion with their

preexisting ANA®-formative marks. The very existence of this opposition underscores the core

issue in this case: Defendant, with actual or constructive knowledge of Plaintiffs' ANA® brand

family and trademark rights, proceeded to pursue federal registration for a designation that

overlaps directly with Plaintiffs' protected identity and brand.

61.     Defendant's conduct was not accidental or uninformed. By the time it rebranded

its legal conference and applied to register the mark, Plaintiffs' ANA®, ANA LAW®, and other

ANA®-formative marks were already federally registered or in widespread commercial use, and

Ms. Juneja's public presence in the legal field, as both a practicing IP attorney and a legal

educator, was well-established. It is implausible that Defendant—an association that holds itself

out to be an authority in marketing, advertising, and brand management—was unaware of the

potential conflict. To the contrary, Defendant was explicitly placed on notice through the TTAB

opposition and other communications. Yet Defendant has persisted in using the infringing

designation, including holding its "ANA Masters of Advertising Law" and "ANA Law 1-Day"

conferences and over the last several years, and using the hashtag #ANALAW, with full

knowledge of Plaintiffs' rights and objections. This continued use, despite actual notice and the

pending TTAB opposition, demonstrates willfulness and bad faith.

**G. Defendant's Default in TTAB Opposition Proceedings**

62.     On July 1, 2023, Plaintiffs filed Opposition No. 91285847 before the Trademark

Trial and Appeal Board, opposing Defendant's application to register "ANA MASTERS OF

ADVERTISING LAW" (Serial No. 97294580).

63.     Plaintiffs sent cease-and-desist e-mail communications and a formal cease-and-desist letter(s) on July 11 2023, March 14 2024, June 11 2025, and June 19, 2025. Defendant continues to use the disputed marks, even as of now (November 2025).

64.     On February 15, 2024, Plaintiff served Defendant with Opposer's First Interrogatories, Requests for Admission, and Requests for Production of Documents and Things in TTAB Opposition No. 91285847 (Exhibit J). The Requests for Admission sought admissions that (1) Plaintiff's use of ANA LAW® predated Defendant's use; (2) the parties' services are similar and overlapping; (3) Defendant had knowledge of Plaintiff's ANA LAW® mark before filing its application; (4) there is a likelihood of confusion; (5) Defendant used the phrase "ANA Law 1-Day Conference" and the hashtag #ANALaw in connection with legal services; and (6) Defendant never obtained permission to use Plaintiff's marks. Defendant, represented by Reed Smith LLP, failed to respond to any discovery requests by the deadline set under Fed. R. Civ. P. 33 and 36. Defendant did not request an extension or otherwise engage in discovery.

65.     Under Fed. R. Civ. P. 36(a)(3), each unanswered request for admission is *deemed admitted* as a matter of law. Accordingly, the foregoing facts were conclusively established in the TTAB proceeding.

66.     On June 10, 2025, Plaintiff filed a Motion for Summary Judgment before the Trademark Trial and Appeal Board based on those deemed admissions (Exhibit K). The motion explained that no genuine dispute of material fact remained because Defendant's failure to respond to Requests for Admission established priority, likelihood of confusion, and unauthorized use.

67.     Defendant did not oppose the motion. On September 25, 2025, the Board granted Opposer's Motion for Summary Judgment as conceded, sustained Opposition No. 91285847, and refused registration of Defendant's application Serial No. 97294580 for "ANA MASTERS OF ADVERTISING LAW." (Exhibit L; see TTAB Order of Sept 25 2025).

68.     Despite this adverse ruling and repeated notices, Defendant continued using "ANA Masters of Advertising Law" and the hashtag #ANALaw through its 2025 Chicago conference, demonstrating willful disregard of Plaintiff's rights.

### H.     Harm to Plaintiffs

69.     Upon information and belief, consumers encountering "ANA" in the legal education space did not associate that term with Defendant until it began aggressively promoting the "#ANALaw" event hashtags and "ANA Masters of Advertising Law" conference in 2022. Multiple inquiries to Ms. Juneja referenced surprise or confusion over the appearance of the "ANA" name in law-related contexts outside of Plaintiffs' control. This confirms that Defendant's use postdates the development of Ms. Juneja's ANA® brand family and that the relevant public perceives "ANA" as signifying that brand family in the legal context.

70.     Defendant's use of "ANA" in connection with a law-focused event has already caused actual confusion in the marketplace. Lawyers, influencers, and members of the legal community familiar with Ms. Juneja's ANA® and ANA®-formative brand, her law practice, her legal content on social media, and her CLEs have reasonably assumed that Defendant's "ANA Masters of Advertising Law" and "ANA Law 1-Day" conferences are affiliated with her—either as a sponsor, speaker, or endorser. Clients of Ms. Juneja have inquired whether she is involved in Defendant's conferences, illustrating real-world confusion regarding the source, affiliation, or endorsement of Defendant's legal programming.

21

71.     Defendant's branding has blurred the distinct association between "ANA" and Ms. Juneja's professional identity. Consumers now encounter "ANA" and even "ANA LAW" in a legal context that is unrelated to Ms. Juneja, thereby eroding the distinctiveness of Plaintiffs' marks and diluting their source-identifying power. This confusion also compromises Ms. Juneja's ability to control her brand and message. Rather than "ANA" clearly and exclusively signifying Ana Juneja's legal and education services, the mark is now being appropriated in a setting that Plaintiffs do not control or endorse.

72.     Defendant's use of the infringing designations exposes Ms. Juneja to reputational risk. Any dissatisfaction, controversy, or substandard quality associated with Defendant's event may be wrongfully attributed to her. Defendant's unauthorized use of "ANA" thus jeopardizes the goodwill, professional recognition, and consumer trust that Ms. Juneja has built. If not enjoined, this infringement will continue to undermine Ms. Juneja's brand and her hard-earned position in the legal and education marketplace.

## I.     Defendant's Use of False Advertising and Misleading Claims

73.     Upon information and belief, in connection with its "ANA Masters of Advertising Law" event, Defendant has disseminated false and misleading commercial advertising about its digital event platform. In official brochures, digital registration pages, and the app's onboarding interface, Defendant prominently claims its mobile application is "The leading AI-powered event app." Upon information and belief, this statement is positioned as a factual claim of technological superiority, intended to influence perceptions of Defendant's innovation,

22

credibility, and status in the legal education marketplace.



Specifically:



(see Exhibit M for full website screenshot of https://www.ana.net/content/show/id/ms-baalaw-nov25)

74.     Upon information and belief, Defendant's mobile event platform is not available through any public app marketplace top app listing, including the Apple App Store or Google Play Store. Upon information and belief, the product used for Defendant's conferences is a private-label event-management portal supplied by a third-party vendor that offers only standard scheduling and messaging functions, with no disclosed or demonstrable artificial-intelligence capabilities (see Exhibit M). Upon information and belief, Defendant disseminated the claim through its registration portal and promotional materials for the ANA Masters of Advertising Law Conference

75.     These statements are not mere puffery. The Federal Trade Commission has repeatedly warned that AI-related marketing claims must be truthful, specific, and substantiated. In February 2023, the FTC stated: "If you think you can get away with baseless claims that your product uses AI, think again." FTC Business Blog, Keep Your AI Claims in Check (Feb. 2023). In April 2023, the FTC issued an Enforcement Policy Statement confirming that claims of AI capability or superiority must be supported by verifiable evidence. See FTC Enforcement Policy Statement on Deceptive or Unfair AI Claims, 88 Fed. Reg. 22846 (Apr. 13, 2023).

76.     By promoting this unsubstantiated "leading AI" claim in connection with the same legal conference that misappropriates Plaintiff's ANA® and ANA LAW® marks, Defendant compounds the risk of public deception. The false AI claim improperly enhances Defendant's brand at Plaintiff's expense and creates an unavoidable association between Plaintiff's name and unverified marketing hype.

77.     This is not an abstract reputational concern. Plaintiff is a licensed intellectual property attorney whose professional brand is rooted in legal accuracy, FTC compliance, and public education about deceptive marketing. Her audience—comprised of attorneys, business

owners, corporate counsel, and regulators—relies on her credibility in identifying and challenging false advertising. Association with a brand making unsubstantiated AI superiority claims directly undermines her reputation and threatens the trust she has built in the very communities she serves.

**J.    Defendant's Infringement of Female Creators' IP in the Name of Feminism**

78.    Defendant's "SeeHer" initiative is a high-profile campaign launched in 2016 by Defendant in partnership with the White House and Defendant's Alliance for Family Entertainment. Marketed as a groundbreaking vehicle for gender equity in media and marketing, SeeHer purports to "eliminate gender bias across the industry" and to promote the accurate portrayal of women and girls in advertising, entertainment, and branded content. Central to SeeHer's self-promotion is the Gender Equality Measure® (GEM®), a proprietary metric it claims quantifies inclusion and bias in visual media.

79.    SeeHer operates under Defendant's corporate umbrella and is prominently featured on Defendant's main website (ana.net) and through its own platform (seeher.com). It maintains a robust presence on Instagram, TikTok, LinkedIn, and other platforms, where it curates content showcasing women and marginalized creators as part of its branded advocacy. According to public materials, SeeHer claims to elevate underrepresented voices, support inclusive storytelling, and "change the face of media."



## In the Spotlight

Explore the bold ideas, proven tools, and standout leaders shaping the future of inclusive marketing.



### Connect With Diverse



### Spotlight Industry Change Makers



### The Teams Raising the Bar





80.    In practice, however, Defendant has used the SeeHer platform to engage in widespread, unauthorized reproduction of copyrighted works authored by the very creators it claims to champion. Throughout 2025, SeeHer's Instagram and TikTok accounts reposted hundreds of short-form videos created by independent female creators—many of which involved deeply personal content including depictions of parenting, disability, activism, and original performances. These reposts were not made using platform-native tools like Instagram's "Add to Story" or TikTok's "Repost" function, which preserve attribution and consent. Rather, Defendant downloaded these creators' original content, re-uploaded the works to SeeHer-branded accounts,

and integrated them into its gender equity marketing—without consent, contract, license, or notice.













81.    On July 1, 2025, Ms. Juneja sent direct messages to over 200 of the affected

creators, notifying them of SeeHer's unauthorized use of their content.

82.    Within 24 hours—on July 2, 2025—SeeHer's Instagram account was taken offline. Visitors to the page saw a standard Instagram message stating that the account was no longer available. Upon information and belief, Defendant deleted the account in direct response to Plaintiff's outreach and anticipated legal exposure.



83.    Approximately two days later, SeeHer's Instagram account reappeared online. However, every post containing the unauthorized, downloaded, and re-uploaded videos from independent female creators had been removed. The restored account contained only non-infringing content, confirming that Defendant had both the ability and control to identify and delete the infringing works once confronted, yet had chosen to exploit them for commercial gain until forced to act.

84.    This was obviously illegal. *See Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1172 (9th Cir. 2012) ("Giving credit to the author does not excuse infringement."); *BWP Media USA, Inc. v. Clarity Digital Grp., LLC*, 820 F.3d 1175, 1179 (10th Cir. 2016) ("Posting on social media does not waive copyright or grant a general license to republish."). It is especially remarkable that Defendant—a trade association representing some of the largest national advertisers and holding itself out as an authority on marketing best practices—appears unable to operate a basic Instagram account without engaging in wholesale copyright infringement. Defendant's own member companies would never tolerate this level of brand risk in their own campaigns, yet their industry's flagship association has publicly modeled it.

85.    This is particularly egregious given Defendant's branding. SeeHer portrays itself as a protector of women's stories and rights, yet engaged in systematic misappropriation of female-authored content to promote its own metrics, marketing, and equity narratives. The very creators SeeHer claims to empower were exploited—uncompensated, uncredited, and uninformed.

86.    Being associated—even indirectly—with an organization that brazenly steals the work of female creators strikes at the heart of everything Plaintiffs' brand represents. As an intellectual property attorney and educator, Ms. Juneja has built her reputation on protecting creators from exactly this kind of exploitation. As a woman of color advocating for equity in the creative and professional industries, she has championed the rights of underrepresented voices. Defendant's use of "ANA" while engaging in systemic misappropriation of women's work delivers a double injury: it undermines her authority in the IP field and it tarnishes her credibility as an advocate for women. The association is reputationally toxic, professionally disqualifying,

and commercially damaging—eroding the trust that clients, students, and the public place in her to uphold the very principles Defendant has so flagrantly violated.

## CLAIMS FOR RELIEF

### COUNT I: Federal Trademark Infringement (15 U.S.C. § 1114)

87.    Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

88.    Plaintiff Ana IP Holdings LLC is the owner of valid U.S. trademark registrations, including ANA® (Reg. No. 7,197,737) and ANA LAW® (Reg. No. 6,757,972), both for legal services in Class 45. These registrations are valid, subsisting, and entitle Plaintiffs to nationwide priority under 15 U.S.C. § 1115.

89.    Without Plaintiffs' consent, Defendant has used and continues to use the identical term "ANA", including in phrases such as "ANA Masters of Advertising Law" and in hashtags such as #ANALaw, in commerce in connection with legal education and networking services. This use constitutes infringement of Plaintiffs' ANA® registration under 15 U.S.C. § 1114(1) as it is a colorable imitation and reproduction of a registered mark, used in commerce in a manner likely to cause confusion, mistake, or deception.

90.    Defendant's unauthorized use of "ANA" in the context of legal conferences and advertising law events is likely to cause confusion, including initial interest confusion and post-sale confusion, among relevant consumers and the public. The consuming audience—which includes attorneys, corporate counsel, marketing professionals, and creators, many of whom are aware of Plaintiffs' ANA LAW® brand—could reasonably believe that the "ANA Masters of Advertising Law" conference is sponsored by, affiliated with, or otherwise connected to Ana Juneja or Ana Law LLC. The likelihood of confusion is exacerbated by the strength of Plaintiffs'

ANA® mark in the legal field, the virtually identical nature of the term "ANA" as used by both parties, and the overlapping channels of trade and promotion (including online marketing and professional networks). Indeed, the dominant portion of Defendant's conference name ("ANA") is identical to Plaintiffs' mark, and Defendant uses it in conjunction with the phrase "Advertising Law," which heightens the association with Plaintiff's legal services.

91.    Defendant's acts of infringement have been knowing, deliberate, and willful. Defendant had actual and constructive knowledge of Plaintiffs' trademark rights (owing to the federal registrations and the recognition of the ANA® and ANA LAW® brand in legal circles) well before and during its infringing use. Defendant nonetheless proceeded to use "ANA" in the infringing manner and even sought federal registration of an infringing mark. Such conduct demonstrates an intent to trade on Plaintiffs' goodwill and/or a reckless disregard for Plaintiffs' rights. This willfulness entitles Plaintiffs to enhanced damages and attorneys' fees, and makes this case "exceptional" under 15 U.S.C. § 1117(a).

92.    Defendant's infringement has caused and, unless enjoined by this Court, will continue to cause irreparable harm to Plaintiffs' business, reputation, and goodwill for which there is no adequate remedy at law. Plaintiffs have suffered, and will continue to suffer, loss of the goodwill associated with their ANA®-formative marks, as well as loss of control over its brand and reputation, due to the confusion and dilution sowed by Defendant's actions. Plaintiffs are therefore entitled to injunctive relief to stop Defendant's infringing conduct. Plaintiffs also seek recovery of Defendant's profits attributable to the infringement, Plaintiffs' damages, and the costs of this action, as allowed under 15 U.S.C. §§ 1116 and 1117, in amounts to be proven at trial.

93. Plaintiffs alternatively seek a reasonable royalty for Defendant's unauthorized use, estimated at $2,399 per conference attendee × average attendance of 750 x 4 years (2022-2025) for only one of Defendant's several conferences that infringe on Plaintiff's marks. This would amount to a total of $7,197,000 (see Exhibit N).

**COUNT II: Federal Unfair Competition / False Designation of Origin (15 U.S.C. § 1125(a))**

94. Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

95. Defendant's use of "ANA" constitutes a false designation of origin under 15 U.S.C. § 1125(a), in that it falsely suggests a connection, affiliation, or endorsement by Plaintiffs. Because Plaintiff Ana IP Holdings LLC owns the registered mark ANA® for legal services, Defendant's use of that identical mark in the same commercial channel is presumed to cause confusion and appropriates Plaintiff's goodwill.

96. Plaintiffs' ANA®-formative marks, including without limitation ANA® and ANA LAW®, are protectable trademarks under federal law. These marks had acquired distinctiveness and recognition in the relevant market long before Defendant's first unauthorized use of "ANA" in connection with its advertising law conference. Plaintiffs have continuously used the ANA®-formative marks in commerce and has built up substantial goodwill under those marks.

97. Defendant's use of "ANA" in the manner described is likely to cause confusion, mistake, or deception among consumers and the public for the reasons already stated. To the extent Defendant's services are not identical to Plaintiffs', they are at least sufficiently related in the minds of consumers (legal education and networking versus legal counsel and education via media) such that the public is likely to mistakenly believe there is a connection or endorsement.

The confusion caused by Defendant's false designation is not limited to the point of sale; rather, it extends to confusion before, during, and after Defendant's events, as individuals encountering the "ANA Masters of Advertising Law" name in advertisements, social media, or professional literature may wrongly assume an affiliation with Ana Law or Ana Juneja.

98.    By appropriating Ms. Juneja's ANA® and ANA LAW® brand and identity, Defendant has misrepresented the nature, characteristics, and origin of its services, in violation of 15 U.S.C. § 1125(a)(1)(B). This misrepresentation is material in that it is likely to influence the decisions of consumers (e.g., whether to attend Defendant's conference or engage with Defendant's offerings under the mistaken belief of an affiliation with Ms. Juneja). Plaintiffs have been damaged by these misrepresentations, as they divest Plaintiffs of recognition and credit for the ANA® name in contexts where it rightfully belongs to Plaintiffs, and they deprive Plaintiffs of the ability to control its reputation.

99.    Defendant's conduct as alleged was and is willful, deliberate, and done with the intent to capitalize on Plaintiffs' goodwill and to confuse the public. Despite knowing of Plaintiffs' objections and superior rights, Defendant deliberately proceeded to amplify its use of the "ANA" name, demonstrating a callous disregard for the truth and for consumer clarity. Such willful conduct justifies an award of Defendant's profits, Plaintiffs' damages (including potential treble damages), and attorneys' fees under 15 U.S.C. § 1117(a) and (b).

100.    Defendant's false designation of origin and unfair competition have caused and will continue to cause irreparable injury to Plaintiffs' goodwill and reputation. Money damages alone cannot fully remedy the ongoing harm to Plaintiffs' brand identity and customer trust. Plaintiffs therefore are entitled to permanent injunctive relief to stop Defendant's false and misleading use of "ANA" and to correct any false impressions created in the marketplace.

Plaintiffs also seeks all other relief available under the Lanham Act, including damages, disgorgement of Defendant's ill-gotten gains, corrective advertising costs, and other just and proper relief.

### COUNT III: Common Law Trademark Infringement and Unfair Competition (New York Law)

101.    Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

102.    Plaintiffs' ANA®, ANA LAW®, and other ANA®-formative marks are entitled to protection under the common law of the State of New York. Through Plaintiffs' continuous and substantial use of the ANA name and marks in commerce, including in New York, Plaintiffs have developed significant common law rights and goodwill in those marks in this State. The marks are distinctive to the consuming public and are associated with Plaintiffs' services.

103.    Defendant's above-described acts of trademark infringement and false designation of origin also constitute trademark infringement and unfair competition under New York common law. By using the confusingly similar "ANA" designation in connection with its services, Defendant has misappropriated the advantages of Plaintiffs' valuable reputation and goodwill in New York. Defendant's conduct is likely to cause confusion among the public in New York as to the source or sponsorship of Defendant's services, and it enables Defendant to benefit unfairly from the reputation that Plaintiffs have established.

104.    Defendant's actions have been committed in bad faith, with full knowledge of Plaintiffs' rights and with the intent to deceive consumers or to reap where it has not sown. Such bad faith is evidenced by, inter alia, Defendant's persistence in using the "ANA" name after receiving notice of Plaintiffs' objections, and its attempt to secure a trademark monopoly via federal registration of a mark it knew was claimed by Plaintiffs. Defendant's conduct reflects an

intent to prey on Plaintiffs' brand value and constitutes willful misappropriation of Plaintiffs'
intellectual property.

105.    As a direct and proximate result of Defendant's infringing and unfair activities,
Plaintiffs have suffered and will continue to suffer damage, including loss of control over its
business reputation, dilution of the distinctiveness of its marks, and diversion of potential
business opportunities. Defendant's conduct has been malicious, fraudulent, and oppressive,
warranting the imposition of punitive damages under New York law to punish Defendant and
deter such willful infringement in the future. Plaintiffs are further entitled to injunctive relief
under New York common law to restrain Defendant from continuing its unlawful conduct, and to
an award of damages in an amount to be determined, including an accounting of profits
wrongfully gained by Defendant in New York through its misappropriation of Plaintiffs'
trademark rights.

**COUNT IV: Federal False Advertising (15 U.S.C. § 1125(a)(1)(B))**

106.    Plaintiffs repeat and reallege each and every allegation set forth in the foregoing
paragraphs as if fully set forth herein.

107.    Upon information and belief, Defendant has made and continues to make false
and misleading statements of fact in commercial advertising and promotion concerning the
nature, characteristics, and quality of its services and platforms in connection with its legal
events, including the "ANA Masters of Advertising Law" and "ANA Law 1-Day" conferences.

108.    Specifically, Defendant has promoted its events and mobile applications as "The
leading AI-powered event app," among other superlative claims, in a manner that is false or
misleading, material to consumer decision-making, and lacking substantiation. Upon information
and belief, no independent ranking or recognized authority has verified Defendant's app as the

leading product in its class, and Defendant's claim is intended to create a false impression of superiority and endorsement that does not exist.

109.    These false statements appear in connection with Defendant's infringing use of the ANA and ANA LAW brand and in the same channels in which Plaintiffs market their legal services and educational offerings. Defendant's misrepresentations are likely to deceive consumers and divert commercial interest, attendees, and sponsors based on inaccurate or unverifiable information.

110.    Defendant's conduct violates 15 U.S.C. § 1125(a)(1)(B), which prohibits false or misleading representations in commercial advertising or promotion. Defendant's conduct is deliberate and reckless and is designed to enhance its own market position and commercial advantage at the expense of Plaintiffs' goodwill, accuracy in the market, and fair competition.

111.    As a direct and proximate result of Defendant's false advertising, Plaintiffs have suffered harm to their commercial reputation and are likely to continue suffering harm unless enjoined. Plaintiffs are entitled to permanent injunctive relief, corrective advertising, disgorgement of profits earned through false representations, attorneys' fees, and any additional relief the Court deems appropriate under the Lanham Act.

**COUNT V: Federal Trademark Dilution (15 U.S.C. § 1125(c))**

112.    Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

113.    Plaintiffs' federally registered ANA® (Reg. No. 7,197,737) and ANA LAW® (Reg. No. 6,757,972) trademarks for legal services are distinctive, inherently strong, and have acquired widespread public recognition and renown in the relevant industry.

114.    Through extensive commercial use, social media prominence, public-facing legal education efforts, national press coverage, professional accolades, and consistent branding, the ANA® and ANA LAW® marks have become widely recognized by the general consuming public of the United States as designators of Plaintiffs' goods and services. The marks are famous within the meaning of 15 U.S.C. § 1125(c).

115.    Defendant's use of the designation "ANA Masters of Advertising Law," "ANA Law 1-Day," and the hashtag #ANALaw in connection with legal education, CLE programming, and marketing conferences is likely to cause dilution of the distinctive quality of Plaintiffs' marks by blurring, in violation of 15 U.S.C. § 1125(c).

116.    Defendant's use is commercial, began after Plaintiffs' marks became famous, and impairs the distinctiveness and value of the ANA brand by associating it with a separate and unrelated source of legal programming. Defendant's conduct reduces the ability of Plaintiffs' marks to serve as unique identifiers of origin and weakens the strong public association between "ANA" and Ms. Juneja's legal services and education.

117.    Defendant acted willfully, with actual knowledge of Plaintiffs' rights, including the federal registrations and opposition to Defendant's attempted registration of an infringing mark. Defendant's continued use of the ANA designation in a legal context constitutes intentional dilution.

118.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered and will continue to suffer dilution of the value and distinctiveness of its famous marks, irreparable harm to its brand, and damage to its goodwill.

119.    Plaintiffs seek injunctive relief under 15 U.S.C. § 1125(c)(1) to prevent further dilution. Plaintiffs further seek damages and attorneys' fees under 15 U.S.C. § 1117(a) and (c), to

the extent permitted by law, as well as any and all other remedies the Court deems just and proper.

**COUNT VI: Trademark Dilution Under New York General Business Law § 360-l**

120.    Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

121.    Plaintiffs' ANA® and ANA LAW® marks are distinctive and strong marks that have acquired secondary meaning and broad recognition in New York through consistent use in commerce, media exposure, widespread online presence, professional accolades, and association with Plaintiffs' founder Ana Juneja, who regularly markets her services to New York-based clients and audiences.

122.    Defendant has made unauthorized use of substantially identical and confusingly similar marks—namely "ANA Masters of Advertising Law," "ANA Law 1-Day," and #ANALaw—in the same market sector of legal services and education, and in the same geographic area, including New York. These uses are likely to dilute the distinctive quality of Plaintiffs' marks through blurring.

123.    Defendant's conduct is likely to impair the uniqueness and selling power of Plaintiffs' ANA®, ANA LAW®, and other ANA®-formative marks, even in the absence of direct consumer confusion, and constitutes actionable dilution under New York General Business Law § 360-l.

124.    Defendant had actual knowledge of Plaintiffs' marks and continued its use with full awareness of Plaintiffs' objections and trademark rights, further demonstrating bad faith and intentional dilution.

125.    As a result of Defendant's dilution, Plaintiffs have suffered and will continue to suffer irreparable harm, including loss of distinctiveness and weakening of brand equity, for which there is no adequate remedy at law.

126.    Plaintiffs are entitled to injunctive relief to prevent further dilution of its marks under GBL § 360-l. Because Defendant's conduct is willful and malicious, Plaintiffs also seek punitive damages to the fullest extent permitted under New York law, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in its favor and against Defendant Association of National Advertisers, Inc., and grant the following relief:

1. **Permanent Injunctive Relief:** An order preliminarily and permanently enjoining Defendant, its officers, agents, employees, affiliates, and all persons in active concert or participation with it, from using the term "ANA" – or any mark confusingly similar to Plaintiffs' ANA Marks – in connection with legal services, legal education, legal information, legal conferences, or any relevant goods or services, including but not limited to ceasing all use of "ANA Masters of Advertising Law," "ANA Law 1-Day," or any other infringing designation;

2. **Corrective Action:** An order requiring Defendant to undertake corrective advertising or announcements, in a form and manner approved by the Court, to dispel any public confusion caused by its infringing use of "ANA," and requiring Defendant to expressly disclaim any affiliation with Plaintiff or Ms. Ana Juneja in connection with any past or future advertising law conferences or materials;

3. **Delivery and Destruction of Infringing Materials:** An order directing Defendant to deliver up for destruction all signage, brochures, promotional materials, digital content (including web pages and social media content), and any other physical or electronic materials bearing the infringing "ANA" designation (alone or in combination with other words) in connection with legal or educational services, pursuant to 15 U.S.C. § 1118;

4. **Damages and Defendant's Profits:** An award of Plaintiffs' actual damages sustained as a result of Defendant's acts of infringement and unfair competition, and/or an award of Defendant's profits attributable to the infringement, in an amount to be determined at trial, such damages and profits to be trebled as allowed by law due to the willful and intentional nature of Defendant's conduct under 15 U.S.C. § 1117(b);

5. **Federal Dilution Relief:** A finding that Plaintiffs' ANA® and ANA LAW® marks are famous under 15 U.S.C. § 1125(c), and an award of injunctive relief and damages for dilution by blurring, including all remedies available under 15 U.S.C. § 1125(c)(5) and § 1117(a);

6. **New York Dilution and Punitive Damages:** A finding that Defendant has diluted the distinctive quality of Plaintiffs' marks in violation of New York General Business Law § 360-l, and an award of injunctive relief and punitive damages as permitted under New York law for Defendant's willful and egregious conduct;

7. **Attorneys' Fees and Costs:** An award of Plaintiffs' reasonable attorneys' fees, costs, and disbursements incurred in this action, pursuant to 15 U.S.C. § 1117(a) and any other applicable statute or equitable doctrine, on the ground that this case is exceptional;

8. **Such Other Relief as the Court Deems Just and Proper:** Any and all further relief that

   the Court deems just, equitable, and appropriate, including but not limited to pre-

   judgment and post-judgment interest on any monetary award.

### JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable as of right.

Dated: November 11, 2025

<div style="margin-left:40%">

Respectfully submitted,

**/s/ Ana Juneja**

Ana Juneja (NY Bar No. 6160642)

Ana Law LLC
1300 Pennsylvania Ave NW Suite 700
Washington DC 20004
212-205-6700 telephone
212-205-6701 fax
docket@analaw.com

*Attorney for Plaintiffs*

</div>

**EXHIBIT LIST**

Exhibit A:    Plaintiffs' registered trademarks

Exhibit B:    Plaintiffs' pending trademark applications

Exhibit C:    Plaintiffs' social media accounts

Exhibit D:    Plaintiffs' CLEs (selected)

Exhibit E:    Plaintiffs' podcast appearances (selected)

Exhibit F:    Plaintiffs' news articles (selected)

Exhibit G:    Search results showing overlap and confusion

Exhibit H:    Defendant's website showing November 2022 rebrand announcement

Exhibit I:    Defendant's Trademark Registration No. 3135709

Exhibit J:    Plaintiff's requests for TTAB discovery documents served on Defendant

    (interrogatories, requests for admission, and requests for production of

    documents)

Exhibit K:    TTAB Motion for Summary Judgment

Exhibit L:    TTAB Order granting Summary Judgment and refusing registration of

    Defendant's application

Exhibit M:    Screenshots of Defendant's 2025 'leading AI-powered event app' claim

Exhibit N:    Attendance data (average) from Defendant's infringing events (2022-2025)